Robert HENCHEY, Plaintiff,

v.

The **TOWN OF NORTH GREENBUSH** and Richard Roberts as Superintendent of the North Greenbush Highway Department and Individually, Defendants.

No. 92–CV–1127.

United States District Court, N.D. New York.

Aug. 30, 1993.

---

962

Rowley, Forrest, O'Donnell & Hite, P.C., Albany, NY, for plaintiff; David C. Rowley, of counsel.

Dreyer, Boyajian & Tuttle, Albany, NY, for defendants; Daniel J. Stewart, of counsel.

## MEMORANDUM–DECISION and ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

Plaintiff Robert Henchey ("plaintiff" or "Henchey") alleges that defendants (1) demoted him from his position as shop foreman for the Town of North Greenbush Highway Department ("Highway Department") on the basis of his political affiliation as a Democrat (Compl. ¶ 37); and (2) subsequently termi-

nated plaintiff's position as a laborer based on his alleged handicap (Compl. ¶ 57). Plaintiff asserts three causes of action, suing (1) under 42 U.S.C. § 1983 for deprivation of his First and Fourteenth Amendment rights; (2) for violation of his rights under Article I, § 8 of the New York Constitution; and (3) under the Rehabilitation Act of 1973 which prohibits, inter alia, discrimination against handicapped individuals by any program or activity receiving Federal financial assistance. Plaintiff seeks declaratory and injunctive relief, back pay, and other damages.

Defendants brought the instant motion for summary judgment pursuant to Fed.R.Civ.P. 56, seeking to dismiss plaintiff's third cause of action only. The court heard oral argument on August 9, 1993 in Albany, New York.

### II. FACTS

Plaintiff was hired as a laborer by the Highway Department in February, 1984 (Def. 10J ¶ 1; Pltf. 10J ¶ 1). At the time of plaintiff's hiring, Frank Guiliano ("Guiliano"), a Democrat, was Superintendent of the Highway Department and had established written requirements for the laborer position (Compl. ¶ 19; Answer ¶ 2; see also Def. Exh. "G"). According to the terms of that job description, the laborer position calls for "routine manual work requiring physical endurance and a willingness to perform arduous tasks," as well as the "ability to lift heavy objects." (Def. Exh. "G"). In accordance therewith, Highway Department laborers typically perform a variety of tasks requiring moderate physical strength and stamina including shoveling, digging ditches, installing culvert pipe, and collecting leaves (Guiliano Dep. 19–20).

Plaintiff alleges that approximately two weeks after he commenced employment, he was injured when he fell in the course of his duties (Compl. ¶ 20; Henchey Dep. 19–20). Although he did not seek medical attention at the time of his fall (Henchey Dep. 20–21; Guiliano Dep. 80–81), he asserts that the accident aggravated his pre-existing back condition known as degenerative disc disease (Compl. ¶ 22; Henchey Dep. 23–24). Thus,

plaintiff missed three (3) months of work due to the fall (Compl. ¶ 20).

Plaintiff also claims that four (4) months after his return to work he was reassigned by Guiliano to work as a "dispatcher," although that was not a formal job title (Compl. ¶ 21; Henchey Dep. 25–26). Significantly, plaintiff claims (and the record presently before the court seems to bear this out) that this reassignment was intended as an accommodation because his injuries prevented him from performing some of his duties as a laborer (Compl. ¶¶ 21–22; Guiliano Dep. 35; Guiliano Aff. 07/93 ¶ 7). Plaintiff held this "dispatcher" position from Fall 1984 until sometime in 1986, at which time he was promoted to shop foreman (Def. 10J ¶ 4; Pltf. 10J ¶ 4).

As shop foreman, then-Superintendent Guiliano continued to accommodate plaintiff's alleged disability by not assigning him "heavy duty" work (Guiliano Aff. 07/93 ¶ 4). Moreover, plaintiff offers evidence to suggest that the Highway Department, under the direction of Guiliano, had a long-standing policy of accommodating other employees by assigning them duties which accommodated their alleged disabilities or injuries (Guiliano Aff. 07/93 ¶¶ 2–4).[1] Plaintiff held the shop foreman position for approximately five (5) years (Compl. ¶¶ 23–25; Henchey Dep. 31).

In November 1991, defendant Richard Roberts ("Roberts"), a Republican, won the election for Superintendent of the Highway Department (Def. 10J ¶ 6; Pltf. 10J ¶ 6). Roberts contends (and plaintiff disputes) that as part of his election platform, he "pledged to do away with the foreman position at the Highway Department to save the taxpayers money." (Roberts Dep. 29; Def. 10J ¶ 6; Pltf. 10J ¶ 6).

Shortly after the election, on December 13, 16 and 18, 1991, Roberts allegedly told plaintiff that he could no longer remain in the shop foreman position because he was a Democrat and "it wouldn't look good." (Compl. ¶¶ 27–30). Defendants, of course, dispute this allegation (Answer ¶ 9; Roberts Dep. 43). Although there is no dispute that Roberts removed plaintiff as shop foreman on January 2, 1992, and returned him to the position of laborer, plaintiff contends that Roberts merely redesignated the foreman position as Deputy Superintendent and appointed a political ally, Bruce Arnold ("Arnold"), to the position (Def. 10J ¶ 7; Pltf. 10J ¶ 7). Roberts thereafter assigned plaintiff duties similar to those he had performed after his alleged injury (i.e. maintenance and sweeping work in the garage) (Answer ¶ 11; Arnold Dep. 29, 49–50; Roberts Dep. 44–45, 50–51).[2]

On January 7, 1992, a few days after plaintiff's reassignment from shop foreman to laborer, Roberts told plaintiff to have his medical status updated to determine if he could perform heavy duty jobs (Compl. ¶ 32; Answer ¶ 2). Plaintiff was examined that afternoon by his doctor who instructed that plaintiff could "work light duty only . . . No heavy lifting." (Def. 10J ¶ 10; Pltf. 10J ¶ 10; Pltf. Exh. "K").

On January 8, 1992, Roberts terminated plaintiff from his position, stating in writing that "I have no light duty work for laborers." (Pltf. Exh. "I"). Plaintiff was earning $23,-000.00 at that time (Compl. ¶¶ 8–9).

Defendants make three arguments in support of their summary judgment motion. First, that plaintiff was not "otherwise quali-

---

**1.** Guiliano recites in his affidavit:

> Due to the nature of the job duties of employees of the Highway Department, employees of the Department were often injured during the course of their duties. Frequently, such injuries prevented employees from performing all of their usual job duties. In such instances, I would attempt to restructure the employee's job duties to accommodate his disability. . . . I do recall specifically restructuring the job duties of Mike Romeo, John Fischer, David Valenti and Robert Henchey, to accommodate their disability.

Guiliano Aff. 07/93 ¶¶ 2, 4.

**2.** Plaintiff argues that this constituted a continuation of the Highway Department's alleged policy of accommodating plaintiff's disability (Pltf. Brief at 5). In support of this contention, plaintiff cites, *inter alia*, defendants' response to plaintiff's First Set of Interrogatories where defendants state: *"As an accommodation to plaintiff,* defendant Roberts allowed him to fulfill his obligations as laborer by sweeping the garage and performing other maintenance work around the garage." (Def. Exh. "H" at 5 (emphasis added); *see also* Roberts Dep. 36, 44, 45, 50–51).

fied" for the position because he was unable to perform the essential duties of laborer. Second, that the Highway Department is neither required to waive the physical requirements of the job, nor transfer plaintiff to a non-laboring position. Third, that plaintiff failed to exhaust his administrative remedies prior to commencing suit.

## III. DISCUSSION

The Rehabilitation Act of 1973 (the "Act")[3] prohibits employers from discriminating against handicapped individuals solely by reason of their handicap. *See generally School Bd. of Nassau County v. Arline,* 480 U.S. 273, 277–79, 107 S.Ct. 1123, 1125–27, 94 L.Ed.2d 307 (1987), *reh. denied,* 481 U.S. 1024, 107 S.Ct. 1913, 95 L.Ed.2d 519 (1988) ("*Arline*"). Section 504 of the Act provides in pertinent part that:

> No otherwise qualified individual with a disability ... as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...

29 U.S.C.A. § 794(a) (Supp.1993).

■ In order to establish a *prima facie* case under § 504, plaintiff here bears the burden of proving the following four elements: *first,* that the North Greenbush Highway Department is a program or activity receiving financial assistance from the federal government; *second,* that plaintiff is an "individual with a disability" within the meaning of the Act;[4] *third,* that the Highway Department terminated plaintiff's position solely by reason of his disability; and *fourth,* that plaintiff is "otherwise qualified"

for the position for which he was hired. *Cushing v. Moore,* 970 F.2d 1103, 1107 (2d Cir.1992); *Gilbert v. Frank,* 949 F.2d 637, 640 (2d Cir.1991); *Doe v. New York University,* 666 F.2d 761, 774–76 (2d Cir.1981).

Defendants have restricted their argument to the final prong of plaintiff's *prima facie* case—that is, whether plaintiff is "otherwise qualified" for his position. The court will therefore do the same.

### A. "Otherwise Qualified" Employee

In *Arline,* the Supreme Court instructed that in determining whether a person is "otherwise qualified" for a particular job, a "district court will need to conduct an individualized inquiry and make appropriate findings of fact." *Arline,* 480 U.S. at 287, 107 S.Ct. at 1130. Based on the conflicting evidence presently before it, the court cannot make such findings.

While the phrase "otherwise qualified" is not defined in the Act, *Gilbert,* 949 F.2d at 641, the basic factors to be considered in conducting this inquiry are well established by case law. In *Southeastern Community College v. Davis* ("*Davis*"), the first case in which the Supreme Court was called upon to interpret § 504 of the Act, the Court held that "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979); *see also Rothschild v. Grottenthaler,* 907 F.2d 286, 290 (2d Cir. 1990) (same). The regulations interpreting the Act reinforce this definition, yet delete the word "otherwise".[5] *See* 45 C.F.R. § 84.-3(k)(1) (1992). The reasoning behind the regulations is that "the omission of the word 'otherwise' is necessary in order to comport

---

**3.** The Act was intended to deter discrimination against handicapped individuals and to expand their employment opportunities and their integration into society. *See* 29 U.S.C.A. § 701 (Supp.1993).

**4.** An "individual with a disability" is "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." 29 U.S.C.A. § 706(8)(B) (Supp.1993). Plaintiff asserts that he satisfies

this definition in that his degenerative disc disease is a physical impairment which substantially limits one or more of his major life activities (Compl. ¶ 54).

**5.** Section 84.3(k) of the C.F.R. uses the phrase "qualified handicapped person", as opposed to "*otherwise* qualified" handicapped person. The distinction is insignificant as the two terms are meant to be interchangeable. *See Davis,* 442 U.S. at 407 n. 2, 99 S.Ct. at 2367 n. 7.

with the intent of the statute because, read literally, 'otherwise' qualified handicapped persons include persons who are qualified *except for* their handicap, rather than *in spite of* their handicap." *Gilbert*, 949 F.2d at 641 (quoting 45 C.F.R. pt. 84, Appendix A, at 379 (1992) (emphasis added)). Thus, in construing the Act together with recent case law and the regulations, it is clear that a plaintiff must demonstrate that he is qualified for a position notwithstanding his handicap.

█ Nonetheless, with respect to the employment context, the regulations go on to define a "qualified handicapped person" as one "who, with *reasonable accommodation,* can perform the *essential functions* of the job in question." 45 C.F.R. § 84.3(k)(1) (1992) (emphasis added). This language instructs that "[w]hen a handicapped person is not able to perform the essential functions of the job, the court must also consider whether any 'reasonable accommodation' by the employer would enable the handicapped person to perform those functions." *Arline*, 480 U.S. at 288 n. 17, 107 S.Ct. at 1131 n. 17.[6] In *Gilbert v. Frank*, the Second Circuit recently summarized the two-part analysis of the Act's "otherwise qualified" requirement originally formulated by the *Arline* Court. The two-steps are as follows:

First, after determining the essential functions of the job in question, the court must evaluate medical evidence to determine whether the plaintiff can perform the job despite the handicap; if the answer is in the negative, "[t]he next step ... is for the court to evaluate whether the employer could reasonably accommodate the employee under established standards...."

*Gilbert*, 949 F.2d at 641 (quoting *Arline*, 480 U.S. at 288, 107 S.Ct. at 1131).[7]

█ This two-step test makes clear that since the definition of "otherwise qualified" includes the concept of "reasonable accommodation," a plaintiff can make out his *prima facie* case by showing that he can perform the essential functions of the job in spite of his handicap either (a) with no need for accommodation, or (b) with a reasonable accommodation. *Gilbert*, 949 F.2d at 642.[8] In the latter case, the burden on the plaintiff is not a "heavy one" and it is sufficient for the plaintiff to "present evidence as to ... his individual capabilities and suggestions for some reasonable assistance or job modification by the employer." *Gilbert*, 949 F.2d at 642. While plaintiff, of course, bears the burden of proving that he is qualified despite his handicap, *Teahan*, 951 F.2d at 515, the ultimate burden of proof on the issue of reasonable accommodation is on the employer. *Gilbert*, 949 F.2d at 642; *see also* 45 C.F.R. § 84.12(a) (employer covered by the Act "shall make reasonable accommodation ... unless [it] can demonstrate that the accommodation would impose an undue hardship on the operation of its program").

The foregoing analysis mandates that two distinct determinations be made. First, the court must determine whether plaintiff can perform the essential functions of his job. If he can, the inquiry ends. However, if he cannot, the court must determine whether any "reasonable accommodation" by the

---

**6.** An employer may use conduct of the employee that results from a handicap to determine whether the employee is "otherwise qualified". *Teahan v. Metro–North Commuter R. Co.*, 951 F.2d 511, 514–16 (2d Cir.1991), *cert. denied*, — U.S. —, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992). In *Teahan*, the Second Circuit commented:

It is not possible to enumerate exhaustively all the factors that go into making such determination for it requires consideration not only of the conduct that is symptomatic of the handicap, but also the work the employee performs and how the two interact. In other words, whether conduct is job-related depends as much on the job as on the conduct.

951 F.2d at 521.

**7.** *See also Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1078 (6th Cir.1988) ("the 'otherwise quali-

fied' inquiry requires a consideration not only of the handicapped applicant's ability to perform the job's essential function, but also whether a reasonable accommodation by the employer would enable the handicapped person to perform those functions").

**8.** In *Gilbert*, the district court had held that unless a plaintiff shows himself to be "otherwise qualified" for the position he held, defendants are *not* required to show that they offered to provide him with "reasonable accommodation." *Gilbert*, 949 F.2d at 639 (citing rationale of the lower court). The Second Circuit effectively rejected this analysis, citing the two-step *Arline* test. *Id.* at 641.

Highway Department would enable plaintiff to perform those functions.

### 1. Essential Functions of the Laborer Position

■ Applying the *Arline* test to the instant case, the initial question concerns the *essential* functions of the job at issue—those of a Highway Department laborer. In support of its contention that a laborer must be able to lift heavy objects and perform other strenuous tasks, defendants cite the job description drafted by former Superintendent Guiliano which provides that a laborer must have the "ability to lift heavy weights," be in "good physical condition" and have "physical endurance." (Def. Exh. "G"). However, and somewhat ironically, plaintiff in opposition cites the deposition testimony of Guiliano in which he states that heavy lifting is *not* an essential aspect of the job (Guiliano Dep. 84; Guiliano Aff. ¶ 7).

■ The court cannot resolve this factual issue on the evidence before it. Despite the express language in the job description, the contradictory evidence submitted by plaintiff is sufficient to raise a question of fact as to whether "heavy lifting" is in fact an essential function of the laborer position. This is so despite any common sense conclusions that the court might draw, and especially true on this motion for summary judgment where the court must resolve all ambiguities and draw all inferences in favor of the non-moving party, plaintiff here. *See Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989). When doing so, the court cannot say that heavy lifting is essential to the performance of plaintiff's duties. Further, it is equally well settled that "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Because the court does not view Guiliano's job description as controlling, and because there is evidence from which differing inferences could be drawn, summary judgment is not proper. It must be left to a jury to weigh each piece of evidence and ascribe to each whatever weight they feel it deserves.

Moreover, even if the court were to find that heavy lifting and strenuous work are essential to the laborer position, a question of fact remains as to whether plaintiff could perform these functions. Although plaintiff testified that "at times" he could not perform heavy lifting tasks (Henchey Dep. 28, 58), former Superintendent Guiliano indicated that plaintiff satisfactorily performed his duties as a laborer for seven and a half years (Guiliano Aff. 07/93 ¶ 8). Additionally, neither the job description, nor any other piece of evidence before the court, *defines* heavy lifting. When Guiliano, the drafter of the laborer job description, was asked what he meant by "heavy," he stated that it is "something that you can't pick up that is very heavy ... it could be over a hundred pounds, it could be over twenty-five pounds. It all depends on who you are." (Guiliano Dep. 82). Indeed, he stated that there was no set definition for what heavy means (Guiliano Dep. 82). Moreover, defendants concede, at least to a limited degree, that the tasks plaintiff performed after his injury *included* the lifting of various objects. To be sure, defendants expressly stated that "[plaintiff] was able to perform his job, which included lifting 40 lb. water jugs and heavy sign posts." (Def. Brief 3–4). Corroborating this is the testimony of Guiliano (Guiliano Dep. 41).

The medical evidence before the court is also of limited assistance in determining whether plaintiff could perform the required lifting functions of the job. Unlike the medical evidence submitted in *Gilbert,* where the plaintiff's treating physician described him as being able to lift no more than 25 pounds, 949 F.2d at 639, the diagnosis by plaintiff's physician in the instant case simply indicates that plaintiff could "work light duty only ... No heavy lifting." This evidence is by no means unequivocal, and fails to provide the court with an adequate basis by which to gauge plaintiff's ability to lift "heavy" objects. As already noted, plaintiff could lift 40 pound water jugs and other objects. Whether this constitutes "light duty" or "heavy lifting" the court cannot say.

In sum, the court cannot say as a matter of law whether heavy lifting is an essential function of the laborer job, what constitutes heavy lifting, or whether plaintiff was capable of performing that function.

## 2. Reasonable Accommodation By Employer

■ The foregoing analysis is not the only nail in this summary judgment coffin. Defendants' motion for summary judgment also fails with regard to the second step of the *Arline* test. That is, even if the court were to assume that shoveling and heavy lifting *are* essential functions of the laborer position, and that plaintiff could not perform these functions, the next step in the analysis requires the court to evaluate whether the employer could reasonably accommodate plaintiff under *established* standards.

■ The court recognizes that while reasonable accommodation "may include such adjustments as modification of physical facilities, work schedules, or equipment, or some job restructuring," *see* 45 C.F.R. § 84.12(b), it does not entail the "elimination of any of the job's essential functions." *Gilbert*, 949 F.2d at 642 (citing cases).[9] However, "job restructuring" may include the shifting of nonessential duties to other employees. 45 C.F.R. pt. 84, Appendix A, p. 383 (1992). Here, the evidence suggests that some of plaintiff's duties as a laborer were in fact shifted to other employees, while plaintiff was given alternative tasks to perform. As already noted, whether these shifted tasks were essential or nonessential is an issue of fact that remains unresolved.

■ Also, while an employer is not required to find another job for an employee who is not qualified for the job he was doing, the employer cannot deny an employee alternative employment opportunities reasonably available under the employer's *existing policies*. *Arline*, 480 U.S. at 288, n. 19, 107 S.Ct. at 1131, n. 19. There is more than ample evidence to suggest that pursuant to established standards, the Highway Department accommodated plaintiff, as well as other Highway Department employees, for several years by assigning duties which reasonably accommodated their alleged disabilities (*See* Guiliano Aff. .07/93 ¶ 2–4; Rowley Aff., Exh. "A"). Likewise, there is some evidence to suggest that defendant Roberts continued to accommodate plaintiff's disability—albeit for a short time—after he succeeded Guiliano as Superintendent (Roberts Dep. 44, 50–55; Answer ¶ 11; Henchey Aff. 07/93 ¶ 4.).[10] It is undisputed that plaintiff was assigned duties which included sweeping the garage and performing other maintenance work around the garage. (Pltf. Exh. "H" at 5; *see also* Roberts Dep. 36, 44, 45, 50–51).

■ Finally, the court finds that there is a genuine question of fact as to whether such restructuring of plaintiff's position has caused or would cause any hardship or substantial adjustment in the operation of the Highway Department.[11] The pertinent regulations parrot the Act by requiring that all recipients of federal funds "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee *unless the recipient can make demonstrate that the accommodation would impose an undue hardship on the operation of its program.*" 45 C.F.R. § 84.12(a) (1992) (emphasis added).[12] Because plaintiff has proffered some

---

**9.** *Accord Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1078 (6th Cir.1988).

**10.** It is true, as defendants point out, that the Highway Department would not *hire* a laborer who could perform only "light duty" work, that person being unqualified (Guliano Dep. at 112). However, where an *existing* employee was injured on the job, the Department also had a policy of restructuring that worker's duties to accommodate the injury (Guliano Aff. 07/93 ¶ 5).

**11.** The regulations list the factors to be considered in determining whether an accommodation would cause undue hardship. They are, for ex-

ample, (a) the overall size of the recipient's program with respect to the number of employees, type of facility and size of budget; (b) the nature of the cost accommodation needed; and (c) the type of operation in question. 45 C.F.R. § 84.-12(c) (1992).

**12.** It is settled that an accommodation is not reasonable if it either imposes "undue financial and administrative burdens on [an employer]," or requires "a fundamental alteration in the nature of [the job]." *Davis*, 442 U.S. at 410, 412, 99 S.Ct. at 2369–70. Therefore, "where reasonable accommodation does not overcome the effects of a person's handicap, or where reasonable

evidence as to his individual capabilities, as well as suggestions for some reasonable assistance or job modification by defendants, defendants bear the burden of showing that such continued accommodation would impose undue hardship. They have failed to do so.

On the other hand, plaintiff has offered evidence to suggest that the defendants' accommodation of plaintiff's alleged disability did not cause any undue financial or administrative burdens on the Highway Department (Guiliano Aff. 07/93 ¶ 5). Further, as noted, plaintiff submits evidence to indicate that such accommodations were part of a long-standing Highway Department policy. Whether such accommodation was reasonable, and continues to be reasonable, must be determined by the trier of fact in light of all the surrounding circumstances.

## B. Failure to Exhaust Administrative Remedies

■ Defendants also contend that plaintiff was required to exhaust his administrative remedies prior to commencing this action. This argument is without merit. The cases cited by defendants are clearly distinguishable as they apply specifically to handicap discrimination by the *federal* government under section 501 of the Act. *See Prewitt v. U.S. Postal Serv.,* 662 F.2d 292, 304 (5th Cir.1981) ("Prewitt I"); *Prewitt v. U.S. Postal Serv.,* 662 F.2d 311, 314 (5th Cir.1981) ("Prewitt II"); *Williams v. Casey,* 691 F.Supp. 760, 767 (S.D.N.Y.1988); 29 U.S.C.A. § 791 (1985).

More recent New York case law, addressing a private right of action under section 504 of the Act, mandates a different conclusion. A majority of courts addressing this issue have declined to require the exhaustion of administrative remedies. *See e.g., Rothschild v. Grottenthaler,* 716 F.Supp. 796, 800–801 (S.D.N.Y.), *aff'd in part, vacated in part,* 907 F.2d 286, 290 (2d Cir.1990) ("[s]ection 504 of the Rehabilitation Act, unlike Section 501 ..., does not explicitly require the exhaustion of administrative remedies"); *Phi-*

*lipp v. Carey,* 517 F.Supp. 513, 520 (N.D.N.Y. 1981) ("unavailability of meaningful administrative channels exempts a litigant's claim under this section from an exhaustion requirement"); *Klein v. Albro,* 81–CV–1288, *slip op.* (N.D.N.Y.1982) (and cases cited therein); *Sherry v. New York State Educ. Dep't,* 479 F.Supp. 1328, 1333–34 (W.D.N.Y. 1979); *but see Gilbert,* 949 F.2d at 638 (dicta) (both of plaintiff's prior actions "were dismissed for failure to exhaust administrative remedies.... Though there remained some question as to exhaustion [on plaintiff's third action], the district court concluded that ... the court should reach the merits of his claims").

The court adopts the reasoning contained in those cases holding that exhaustion of administrative remedies is not required.

## C. Collective Bargaining Agreement

■ Finally, defendants submit the affidavit of Gregory Davis, a CSEA labor relations specialist, in support of their contention that the establishment of a clerical job for plaintiff would usurp the rights of other employees under the collective bargaining agreement between the CSEA and North Greenbush. They argue that before plaintiff would be entitled to a clerical position, he would have to take an appropriate exam and compete with other civil service applicants. Alternatively, defendants argue that if the position were non-competitive, it would be up to the union to bargain for a rate of pay and the position would be filled based upon seniority. While this argument has some surface appeal, the court does not find it to be dispositive here.

Defendants have failed to identify any provision of the collective bargaining agreement which might limit the right of North Greenbush to add new positions to the Highway Department or to modify the job responsibilities of its employees. Plaintiff, on the other hand, points to Article 17, section 1 of the collective bargaining agreement which provides that

accommodation causes undue hardship to the employer, failure to hire or promote the handicapped person will *not* be considered discrimination." 45 C.F.R. pt. 84, Appendix A, p. 383

(1992); *Alexander v. Choate,* 469 U.S. 287, 299–301 and n. 19, 105 S.Ct. 712, 720 and n. 19, 83 L.Ed.2d 661 (1985); *Strathie v. DOT,* 716 F.2d 227, 232–34 (3d Cir.1983).

"All existing ... practices and general working conditions previously granted and allowed by the employer unless specifically excluded by this agreement shall remain in full force and effect during the life of this agreement ..."

(R. Rowley Aff. ¶ 4; R. Rowley Aff. Exh. "A" at 9). Given the paucity of authority cited by either party on this issue, the court finds that there is a issue of fact as to whether defendants' purported policy of accommodating plaintiff's alleged disability falls within the ambit of the collective bargaining agreement.

### D. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If the moving party can establish that no genuine question of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a similar response setting forth "specific facts showing that there is a genuine issue for trial," absent which summary judgment will be granted. The opposing party "may not rest upon the mere allegations or denials of [his] pleading", Fed.R.Civ.P. 56(e), but rather must present "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Defendants have not met their threshold burden of demonstrating that no genuine issue of material fact exists.

Even had defendants done so, plaintiff, as the non-movant here, has come forward with "specific facts showing that there is a genuine issue for trial." As noted, the court must resolve all ambiguities and draw all inferences in favor of the non-moving party, *Cruden*, 957 F.2d at 975; *Ramseur*, 865 F.2d at 465, and may grant summary judgment "[o]nly when reasonable minds could not differ as to

the import of the evidence ..." *Bryant*, 923 F.2d at 982. Moreover, the Second Circuit has recently reiterated the court's limited role on summary judgment:

> The district court's role [on a summary judgment motion]—and our role on appeal—requires the court not to resolve disputed issues of fact itself, but rather to see if there are issues of fact to be resolved by the factfinder at trial. That is to say, when examining the record before it to see if there are any genuine issues of material fact, the court's focus is on issue-finding, not on issue-resolution.

*Tokio Marine Management, Inc. v. M/V Zim Tokyo*, 91–0063, 1993 WL 322869, *11, 1993 U.S. Dist. LEXIS 11487, at *37–38 (S.D.N.Y. August 17, 1993) (quoting *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568 (2d Cir.1993)); *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 ("at the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

### IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that defendants' motion for summary judgment is **denied.**[13]

**IT IS SO ORDERED.**

---

**13.** As noted at the outset, defendants have not moved for or argued in support of summary judgment with respect to the first three prongs of plaintiff's *prima facie* case. That is, whether (1) plaintiff is a handicapped individual; (2) the North Greenbush Highway Department receives federal financial assistance; or (3) plaintiff was discharged solely on the basis of his alleged handicap. Thus, the court has made no determination with respect to these elements.