**Jose M. VALDEZ, Plaintiff,**

v.

**The ALBUQUERQUE PUBLIC SCHOOLS, Defendant.**

**No. 94–642–M Civil.**

United States District Court, D. New Mexico.

Nov. 18, 1994.

Todd W. Rogers, Nicholas R. Gentry, Oman, Gentry & Yntema, Albuquerque, NM, for Jose M. Valdez.

Eleanor K. Bratton, Michael L. Carrico, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, NM, for Albuquerque Public Schools.

## MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter came on for consideration on defendant's motion to dismiss or, in the alternative, for summary judgment filed on July 6, 1994. Having considered the motion, response and reply, and being otherwise fully advised in the premises, I find that defendant's motion is not well taken and it is hereby denied.

### BACKGROUND

This action is brought pursuant to the Americans With Disabilities Act, 42 U.S.C. §§ 12101–12213 (hereinafter "ADA" or "Act"). Plaintiff Jose M. Valdez claims that defendant Albuquerque Public Schools (hereinafter "APS") discriminated against him because he has a disability and seeks reinstatement to his former job as well as damages and other relief. Jurisdiction of this court is proper under 28 U.S.C. § 1331.

The facts of this case appear to be as follows. Mr. Valdez, who is a 44 year old man, was hired as an equipment operator in APS' Maintenance and Operations Department in 1974. Although Mr. Valdez was involved in a motorcycle accident in 1979 which essentially incapacitated his right arm, he returned to work after recovering from the accident and has worked continuously for APS since then.

An equipment operator's major duties and responsibilities generally involve landscaping and groundskeeping. In addition, APS has delegated to its equipment operators responsibility for supervising the on-site work of persons sentenced by the courts to perform community service. Community service program (hereinafter "CSP") supervision is considered light-duty since it does not involve the lifting, carrying, or operation of machinery associated with most other tasks performed by equipment operators. APS claims CSP supervision has historically been rotated among the equipment operators on a daily basis. Mr. Valdez, on the other hand, claims that CSP supervision has historically been delegated to one employee on a full-time basis during the week, and to rotating groups of four equipment operators on weekends.

According to APS, the condition of Mr. Valdez' right arm had deteriorated over the years to the extent that in April, 1992, Mr. Valdez complained that he was no longer able to perform many of the functions of an equipment operator. In response to Mr. Valdez' alleged complaints, APS claims it significantly increased his involvement as supervisor of the CSP to the exclusion of other employees who previously shared in this task. Mr. Valdez disputes this contention as well, and claims he never complained that he could not perform the functions of an equipment operator. Rather, Mr. Valdez asserts that a majority of the equipment operators did not want to work with the CSP, and consequently that APS asked him to assume responsibility for CSP supervision on a full time basis. Mr. Valdez performed in that capacity for approximately two years beginning in March, 1992, and has received multiple letters of commendation for his CSP work.

In October, 1993, APS obtained a Functional Capacities Evaluation of Mr. Valdez which indicated that he was able to perform work characterized as "light physical demand." Mem.Br. in Supp. of Mot. to Dismiss, or in the Alternative, Mot. for Summ.J., Ex. D. However, the same evaluation indicated that the essential duties of an equipment operator included a number of tasks in the "heavy physical demand" category, which Mr. Valdez is unable to perform. Mr. Valdez claims APS subsequently informed him that he was being discharged from his job because of his disability. As an alternative to discharge, APS allegedly offered Mr. Valdez a part-time position as an educational aide with annual wages of approximately $6,700 and no benefits. Although APS denies it informed Mr. Valdez he was being discharged because of his disability, it admits it offered him a part time job as an educational aide with annual wages in the $6,000–$7,000 range. Mr. Valdez had earned approximately $23,000 plus medical and other benefits as an equipment operator in 1993.

On January 4, 1994, Mr. Valdez filed a complaint for injunctive relief for APS' alleged violations of the ADA. According to Mr. Valdez, APS transferred him into a position as an educational aide at Recovery High School after he filed that complaint. Mr. Valdez was also slated to work in the Maintenance and Operations department during summers when school was not in session. Under this plan, Mr. Valdez would receive the same pay and benefits he had earned as an equipment operator. On June 6, 1994, Mr. Valdez filed this action for reinstatement to his former employment position as well as damages for APS' past conduct. On July 6, 1994, APS filed a motion to dismiss Mr. Valdez' action for reinstatement and damages pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. APS seeks dismissal, or grant of summary judgment, on the ground that it has fully complied with the ADA. Mr. Valdez responds that neither dismissal nor summary judgment are appropriate at this juncture.

## DISCUSSION

Under the Federal Rules of Civil Procedure, this court has authority to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). Dismissal on Rule 12(b)(6) grounds is appropriate "[w]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff." *Neitzke v. Williams*, 490 U.S. 319, 328, 109 S.Ct. 1827,

1833, 104 L.Ed.2d 338 (1989). However, Rule 12(b) also provides as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

APS has offered with its motion various affidavits, documents which describe the duties of an APS equipment operator, and copies of Mr. Valdez' functional capacity evaluations. Mr. Valdez contends that since matters outside the pleadings have been presented, APS' motion should be treated as one for summary judgment. Since Mr. Valdez does not object to APS' introduction of matters outside the pleadings and has also submitted opposing affidavits, I will decide APS' motion as one for summary judgment. *See Building & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1495–96 (10th Cir.1993).

■ Summary judgment is appropriately granted when the court, viewing the record in the light most favorable to the nonmoving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chemical Co.*, 2 F.3d 995, 996 (10th Cir.1993); *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). The party moving for summary judgment bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). Once the movant meets this burden, the opposing party must provide the court with specific facts showing a genuine dispute for trial. Fed.R.Civ.P. 56(e); *Gray v. Udevitz*, 656 F.2d 588, 592 (10th Cir.1981). With this framework in mind, I turn to the merits of APS' motion.

In this action, Mr. Valdez alleges two separate violations of the ADA. Both are premised upon the claim that APS took the following actions solely because of his status as an individual with a disability. First, Mr. Valdez contends he was reassigned to a new position even though he was capable of performing the essential functions of his former position without accommodation. And second, Mr. Valdez contends APS attempted to discharge him and offered an alternative position which paid annual wages less than one third his former pay. APS, on the other hand, alleges Mr. Valdez was unable to perform the essential functions of his prior employment position. APS therefore contends Mr. Valdez' reassignment to a position which requires tasks he is capable of performing, at the same wages and benefits as his prior position, constitutes a reasonable accommodation as a matter of law.

■ Like the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–797b, the ADA was enacted to eliminate discrimination against persons with disabilities. 42 U.S.C. § 12101(b). To that end, the ADA specifically prohibits discrimination in employment (Title I), public services and public transportation (Title II), and public accommodations (Title III). Since courts may utilize case law established under the Rehabilitation Act in deciding cases brought under the ADA, *Dutton v. Johnson County Bd. of County Comm'rs*, 859 F.Supp. 498, 504 (D.Kan.1994), *see also* 42 U.S.C. § 12117(b) (same requirements of both acts should be interpreted consistently), I will use case law established under the Rehabilitation Act and the ADA interchangeably in this opinion.

■ Title I provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As a threshold matter, Mr. Valdez must therefore be a "qualified individual with a disability" in order to fall under the protective umbrella of the ADA.

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employ-

ment position that such individual holds or desires." 42 U.S.C. § 12111(8). In the present case, the parties dispute the characterization of Mr. Valdez' employment position. APS contends Mr. Valdez was hired and paid to be an equipment operator, and when it became apparent that he could no longer perform the heavy physical demand tasks required for that position, it tried to accommodate him by assigning him light duty tasks such as supervising the CSP. However, since Mr. Valdez can no longer perform the heavy physical demand functions of an equipment operator, APS contends the ADA would allow it to terminate Mr. Valdez. Mr. Valdez has not contested the evidence APS has submitted to establish that he can no longer perform the heavy physical demand tasks associated with the equipment operator position. However, Mr. Valdez denies CSP supervision was offered to him as any sort of accommodation. He claims instead that CSP supervision had historically been performed by one employee on a full time basis during the work week, and that APS asked him to assume those duties because the other equipment operators did not want to work with the CSP. Thus, Mr. Valdez contends his employment position was that of CSP supervisor, and since he was able to perform the essential functions of that position without accommodation, the ADA prohibited APS from transferring him because of his disability.

The label placed on Mr. Valdez' employment position is germane only to the question whether Mr. Valdez was a "qualified individual with a disability" entitled to protection under the ADA. I have found few reported cases that address the issue, which may be stated as follows: whether a plaintiff asserting a claim of discrimination on the basis of disability under the ADA must be qualified to perform the position for which he was originally hired; or whether he need only be qualified for the light-duty position to which he was reassigned after becoming disabled. The case I have found which is most factually similar to the present case is *Taylor v. Garrett*, 820 F.Supp. 933 (E.D.Pa.1993). In *Taylor*, the trial judge characterized the same issue on a motion for partial summary judgment as "a simple question requiring a

surprisingly complicated analysis." *Id.* at 933. And, like the court in *Taylor*, I find that Mr. Valdez may still assert cognizable claims under the ADA even if he is unable to perform the essential functions of his original position.

In *Taylor*, the plaintiff was hired by the navy for the position of rigger helper in 1980 and promoted to rigger worker in 1984. In 1986, plaintiff suffered a back injury which rendered him unable to perform the essential functions of a rigger. The navy subsequently assigned plaintiff to a variety of light-duty positions, but still classified him as a rigger. In 1989, the navy terminated the plaintiff for allegedly filing false claims with the government. The plaintiff then filed an action against the navy for discrimination on the basis of his disability under the Rehabilitation Act of 1973, seeking reinstatement to a permanent light duty position. In language similar to the ADA, the Rehabilitation Act prohibits discrimination against "qualified individuals with handicaps." 29 U.S.C. § 794(a). Such an individual is generally defined as one who can perform the essential functions of the *position in question*. 29 C.F.R. § 1613.702(f) (1992) (emphasis added). The navy contended:

> [Plaintiff] was hired as a rigger and remained formally classified as a rigger; therefore, rigger was the 'position in question,' and, even though [plaintiff] might have been qualified to perform other jobs within the Navy and even though he was assigned to perform light-duty work, [plaintiff] was only protected by the Rehabilitation Act insofar as he was "otherwise qualified" to be a rigger.

*Id.* at 936.

The court disagreed with the navy, holding instead that the phrase "position in question" may well include "other positions within the agency to which an employee could be reassigned." *Id.* at 937. Furthermore, and more importantly for the present case, the court found that even if the phrase "position in question" did not include other positions to which the plaintiff could have been reassigned, "when an employee *has* been offered light-duty work ... and that employee chal-

lenges the conditions of, and the reasons for his separation from, such light-duty work, the relevant inquiry must be his qualifications to perform that work in which he was engaged when the alleged discrimination occurs." *Id.* at 938 (emphasis in original). In other words, as Mr. Valdez has asserted, in circumstances such as these "[i]t is the nature of the work, not the classification that should determine an employee's 'employment position' for purposes of enforcing the ADA." Pltf.'s Resp. to Deft.'s Mot. to Dismiss, or in the Alternative Mot. for Summ.J. at 5. For reasons which I will explain more fully below, I will adhere to *Taylor* and hold that Mr. Valdez' inability to perform the essential functions of his original position does not defeat his ADA claims.

■ As a general matter, an employer is not required to restructure the essential functions of an employment position to accommodate an employee's disability. *See Bradley v. University of Texas M.D. Anderson Cancer Ctr.*, 3 F.3d 922, 925 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994); *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1251–52 (6th Cir.1985); *see also Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). But an employer does have an affirmative obligation to offer reasonable accommodations that would help an employee with a disability perform the essential functions of his or her job. *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1130–31 n. 17, 94 L.Ed.2d 307 (1987); *Buckingham v. United States*, 998 F.2d 735, 739 (9th Cir.1993); 29 C.F.R. § 1630 app. (1993). For ADA purposes, a "reasonable accommodation" may include job restructuring. 42 U.S.C. § 12111(9)(B). Thus, while APS was not required to restructure Mr. Valdez' job as a reasonable accommodation, it claims it did in fact do so. *See* Deft.'s Mem.Br. in Supp. of Mot. to Dismiss, or in the Alternative, Mot. for Summ.J. at 7–8 (APS attempted to accommodate plaintiff's disability by modifying distribution of work). Indeed, Mr. Valdez points out that he supervised the CSP on a full time basis for more than two years. This admitted job restructuring notwithstanding, APS also claims Mr.

Valdez was still a heavy equipment operator who was still required to perform the heavy physical demand tasks associated with that position. In this regard, I find APS' positions to be incongruous. If APS restructured Mr. Valdez' duties to accommodate his disability, as it claims it did, I cannot see how APS can also claim Mr. Valdez was still required to perform tasks eliminated by the restructuring.

I also find the *Taylor* opinion persuasive. In that case, the court reasoned that if the employment position in question was strictly limited to the position for which the employee was hired, "an employer who chose to reassign to light-duty work an employee who had become unable to perform his original job would have an unsettling 'carte blanche' power over that employee." *Taylor*, 820 F.Supp. at 939. Indeed, under that construction the employer would be able to engage in egregious discriminatory conduct without sanction while the employee was assigned to light duty functions, "simply because the employee was not 'qualified' for a position that had nothing to do with his current work." *Id.* This result is simply incompatible with the express purpose of the ADA, which is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(B)(1). Accordingly, I conclude that Mr. Valdez' inability to perform the essential functions of a heavy equipment operator does not defeat his ADA claims.

As a digression, I should point out that even if Mr. Valdez was an "equipment operator," the simple fact that he can no longer perform heavy physical demand tasks would not inescapably lead to the conclusion that he is not protected under the ADA. The Supreme Court has announced, albeit in dicta, that while an employer is not required to find another job for an employee who becomes unable to do the job he or she had been doing, it cannot "deny an employee alternative employment opportunities reasonably available under the employer's existing policies." *Arline*, 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19. Courts have interpreted this footnote to mean that employers are obliged to follow their existing policies with regard to

the accommodation of employees who become disabled. *See Henchey v. Town of N. Greenbush,* 831 F.Supp. 960, 967 (N.D.N.Y. 1993) (employer could be held to existing policy of restructuring duties); *Griffin v. Defense Mapping Agency,* 864 F.2d 1579, 1581 (Fed.Cir.1989) (agency could be held to policy, if one existed, of transferring applicants who did not meet qualifications of position sought); *see also Coley v. Secretary of Army,* 689 F.Supp. 519, 522–23 (D.Md.1987) ("position in question" under Rehabilitation Act included all positions for which plaintiff was qualified in view of employer's policy of reassigning employees with disabilities). Since I cannot ascertain from the record whether APS had a policy of restructuring duties for employees who are no longer able to perform the jobs for which they were hired, I would be unable to grant summary judgment for APS even if Mr. Valdez was a heavy equipment operator.

■ APS next appears to allege that even if Mr. Valdez was a CSP supervisor, he cannot perform the essential functions of that position. In support, APS contends Mr. Valdez cannot obtain a CDL license, and consequently that he cannot drive the bus which is used to transport community service workers to the site of their service. Mr. Valdez responds that he can perform the essential functions of a CSP supervisor simply by driving a van with an automatic transmission inasmuch as a bus is not usually needed during the work week. On weekdays when a bus is needed, Mr. Valdez further alleges that two equipment operators have always been assigned to oversee the CSP, irrespective of whether Mr. Valdez was one of the employees. APS counters that only one employee is necessary to oversee the CSP, and that it always assigned only one equipment operator except when Mr. Valdez was working. Mr. Valdez also claims that on weekends there are always four equipment operators assigned to the CSP and one of the others can drive the bus. It is clear that disputed issues of fact as to whether Mr. Valdez could perform the essential functions of a CSP supervisor preclude summary judgment.

■ All that being said, APS does not press the argument that it could terminate Mr. Valdez and even appears to concede that Mr. Valdez is entitled to some form of accommodation. Indeed, APS' motion for summary judgment is premised on the claim that it increased Mr. Valdez' involvement in the CSP as an accommodation. The crux of APS' argument is that since an employer has discretion to choose the particular means by which it will accommodate an employee with a disability, nothing precludes the employer from subsequently adopting the accommodation of its choice. APS reasons that since an employer may choose the "accommodation which it determines to be in its best interests ... [i]t follows that an employer need not explain its chosen means of accommodation, so long as that accommodation is reasonable." Deft.'s Reply Br. in Supp. of APS' Mot. for Summ.J. at 7. Accordingly, APS contends it is entitled to summary judgment because "reassignment to an alternative employment position with equal pay and benefits constitutes a reasonable accommodation, as a matter of law." Deft.'s Reply Br. in Supp. of APS' Mot. for Summ.J. at 6.

One problem I have with APS' argument is that it presupposes the need for an accommodation, which Mr. Valdez strongly denies. As noted above, Mr. Valdez denies his assignment to supervise the CSP supervision was undertaken as an accommodation. Nor is it clear at this time that Mr. Valdez was unable to perform the essential functions of a CSP supervisor, thereby necessitating accommodation. But even if I assume APS was accommodating Mr. Valdez when it assigned him to supervise the CSP, that fact alone would not relieve APS of its affirmative obligation not to discriminate. In other words, the ADA would prohibit an employer who had initially accommodated an employee with a disability from subsequently transferring the employee for discriminatory reasons. *See* 29 C.F.R. § 1630.4(b) (unlawful to discriminate on basis of disability with regard to transfer). In such a case, merely characterizing the subsequent transfer as an "alternative accommodation" would not transform an impermissible employment action into one that is permissible. While I agree that an employer has "ultimate discretion to choose between effective accommodations, and may

choose the less expensive accommodation or the accommodation that is easier for it to provide," 29 C.F.R. § 1630 app. at 416 (1993), an employer's discretion to implement alternative means of accommodation cannot, as APS appears to contend, be unfettered. Rather, that discretion must be tempered by the ADA's command that an employer shall not discriminate. The pertinent question is therefore whether Mr. Valdez' transfer to the position of educational aide constitutes a discriminatory act under the ADA.

APS alleges it decided to return to its previous arrangement of having equipment operators oversee the CSP on a rotating basis, and transferred Mr. Valdez to the position of educational aide for the following reasons. First, it claims Mr. Valdez' reassignment to CSP supervisor was inefficient inasmuch as left the Maintenance and Operations Department short one heavy equipment operator: "APS does not have a need organizationally for a fulltime supervisor of the community service program. It does have a need for a full staff of heavy equipment operators." Pltf.'s Mem.Br. in Supp. of Mot. to Dismiss, or in the Alternative, Mot. for Summ.J. at 3. In conjunction with this claim, APS alleges that on many occasions it had to assign two workers to oversee the CSP when only one is needed because Mr. Valdez cannot drive a bus. Mr. Valdez counters that there is more than enough work with the CSP to keep a full time employee busy. Furthermore, Mr. Valdez alleges that when a bus has been utilized during the work week, two equipment operators have always been assigned to oversee the CSP regardless of whether he was one of them. Mr. Valdez therefore contends APS' claim with regard to efficiency is illogical.

APS' second claim is that other equipment operators were denied the opportunity to oversee the community service program, and that morale was negatively affected by having Mr. Valdez do nothing but oversee the CSP. Mr. Valdez responds that these allegations are "newly made and disputed." Pltf.'s Resp. to Deft.'s Mot. to Dismiss, or in the Alternative Mot. for Summ.J. at 6. He claims instead that APS asked him to supervise the CSP on a full time basis because a majority of equipment operators did not want to work with the CSP.

In part, Fed.R.Civ.P. 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence." Both parties in this action have submitted affidavits in support of their factual contentions, which are made on personal knowledge, and, as noted above, which contain much conflicting testimony. In ruling on a summary judgment motion, a trial judge should not make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Walter v. Morton,* 33 F.3d 1240, 1244 (10th Cir.1994); *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 533 (10th Cir.1994). Rather, the court's function is to decide whether there are questions of fact which might reasonably be resolved in favor of either party. Summary judgment is inappropriate where genuine issues of material fact remain for the ultimate factfinder. Because I find the conflict between affidavits suggests a genuine issue for the trier of fact, summary judgment shall be denied.

## CONCLUSION

I find that Mr. Valdez' inability to perform the essential functions of the employment position for which he was hired does not defeat his claims under the ADA. Rather, the focus of this case should be on whether Mr. Valdez' transfer to the position of educational aide constitutes a discriminatory act. I also find that genuine disputes of material fact as to the following preclude summary judgment at this juncture. First, there is some question as to whether Mr. Valdez was able to perform the essential functions of his light duty employment position prior to his transfer. And second, I cannot ascertain from the record whether or not APS' reasons for transferring Mr. Valdez to the position of educational aide were discriminatory. For the foregoing reasons, summary judgment is hereby denied.

**IT IS SO ORDERED.**