**Charles McCOLLOUGH, Plaintiff,**

**v.**

**ATLANTA BEVERAGE COMPANY, Defendant.**

**Civil No. 1:94–cv–2273–JEC.**

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 27, 1996.

Jeffrey Everett Hickcox, Albert J. DeCusati, McLain & Merritt, Atlanta, GA, for plaintiff.

John E. Donovan, Frasure Kytle Frye, III, Kenneth James Barr, Fisher & Phillips, Atlanta, GA, for defendant.

### ORDER

CARNES, District Judge.

This case is presently before the Court on defendant's Motion for Summary Judgment [27], plaintiff's Motion to Strike [28], defendant's Motion to Strike [36], and plaintiff's Motion to File Supplemental Brief [37]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Summary Judgment should be granted, plaintiff's Motion to Strike should be denied, defendant's Motion to Strike should be denied and plaintiff's Motion to File Supplemental Brief should be denied.

### BACKGROUND

Plaintiff alleges employment discrimination under the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. §§ 12101–12213. The facts of this case are fairly straightforward. Plaintiff began working for defendant in June of 1983 in a warehouse position. Plaintiff was later promoted to the position of Driver/Salesman. Driver/Salesmen operate large delivery trucks, driving from one account to another throughout the day, stopping only to take orders and to unload cases of beer. Driver/Salesmen typically deliver approximately 750 cases of beer per day, lifting several cases (each weighing roughly 20 pounds) at a time. (Affidavit of Stephen A. Craine (hereinafter "Craine Aff.")[1] at ¶ 4.)

In September of 1991, plaintiff injured his back and was restricted by his doctor's orders to less strenuous work. Defendant apparently accommodated plaintiff's physical restrictions, offering him modified or light duty work, such as working in the warehouse, delivering mail, and making special deliveries, until his back condition improved. Plaintiff's back trouble did not improve, however, and he eventually took short term disability leave during March of 1992.

In March of 1992, plaintiff was pulled over by the Snellville, Georgia police department. He was cited for, *inter alia*, driving under the influence of alcohol (hereinafter "DUI"). Plaintiff appeared in court on June 3, 1992 and pled *nolo contendere* to the DUI charge and paid a fine.

Defendant maintains a comprehensive Driver Safety Program to ensure that its drivers safely operate their vehicles. Pursuant to this program, defendant monitors all accidents and moving violations of its drivers. When a driver is found guilty or pleads *nolo contendere* to driving under the influence of alcohol, his Company driving privileges are suspended for three years. Defendant will then demote the suspended driver to a non-driving position, such as that of Route Assistant. Route Assistants accompany the Driver/Salesman and perform the same duties with the exception of sales activities.

When defendant learned of the outcome of plaintiff's DUI charge, Branch General Man-

---

1. Craine's Affidavit is attached to defendant's Motion for Summary Judgment [27].

ager Stephen Craine and Sales Manager John Brannen met with plaintiff. During their visit, Craine and Brannen informed plaintiff of his demotion to Route Assistant.[2] (*See* McCollough Depo. at 63.)

On April 6, 1992, plaintiff had surgery on his back. On November 10, 1992, plaintiff's doctor, Dr. Disch, released plaintiff to return to work with a permanent thirty (30) pound lifting restriction. Plaintiff has maintained at all times relevant to this action that he is unable to stoop, bend, stand or sit for more than 30 to 45 minutes and is very limited in his ability to lift and pull heavy weights. (*See* Affidavit of Charles A. McCollough (hereinafter "McCollough Aff.") [30] at ¶ 6.)

Plaintiff returned to work on November 11, 1992. When defendant learned of plaintiff's permanent physical restrictions, however, defendant discharged him that day. Plaintiff asked to be reassigned to another vacant position or light-duty. Defendant refused his request.

Defendant states that plaintiff was fired because he could no longer perform the essential functions of the Route Assistant position to which he had been demoted. Plaintiff claims that defendant fired him, in violation of the Americans with Disabilities Act, because he is disabled.

## DISCUSSION

### I. Summary Judgment Standard

■ Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish

the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

■ The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. at 2552–53; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir.1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence [3] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553 (quoting FED.R.CIV.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

■ A fact is material when it is identified as such by the controlling substantive

---

2. Although plaintiff contends that he was never "officially" demoted to Route Assistant, the Court finds that the relevant fact is plaintiff's concession that he could no longer hold a driving position with defendant company for a specified number of years in accordance with company policy. As will be discussed, *infra*, plaintiff presents no evidence that any other position was available to him. Whether defendant expressly

communicated to plaintiff that he would be assigned to a Route Assistant position, as opposed to any other position, therefore, is immaterial.

3. The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

law. *Id.* at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. at 2510–11. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. Defendant's Motion to Strike and Plaintiff's Motion to File Supplemental Brief

■ Local Rule 220–1(b) permits a plaintiff to file a response to a defendant's Motion for Summary Judgment. The same Rule, however, forbids the filing of additional briefs, "except upon order of the Court." LR 220–1(b)(2), N.D. Ga.

■ After defendant's reply had been filed with the Court, plaintiff submitted another responsive brief. In light of Local Rule 220–1(b), defendant filed a Motion to Strike Plaintiff's Response in Opposition to Motion for Summary Judgment [36]. "A motion to strike[, however,] is only appropriately addressed toward matters contained in the pleadings, FED.R.CIV.P. 12(f)." *Newsome v. Webster*, 843 F.Supp. 1460, 1464 (S.D.Ga. 1994) (quoting *Smith v. Southeastern Stages, Inc.*, 479 F.Supp. 593, 594 (N.D.Ga.1977)). FED.R.CIV.P. 7(a) identifies complaints, answers, and replies to counterclaims as "pleadings." Notwithstanding the fact that defendant's motion is directed toward a sup-

plemental brief rather than a pleading, the Court notes that defendant's objection has merit.

By submitting an unauthorized response brief, plaintiff has demonstrated a disregard for the procedures to be followed in this Court. *See* Pl.Resp. in Opp. to Def.Reply in Support of Mot. for Sum.J. [35].) Having failed to first request leave to file such document, the Court declines to consider plaintiff's second response.

The Court is unmoved by plaintiff's subsequent Motion to File Supplemental Brief and Response in Opposition to Defendant's Motion to Strike Plaintiff's Response in Opposition to Summary Judgment [37]. Specifically, the Court finds that plaintiff's explanation fails to grasp the importance of following the Court's written procedures. Plaintiff argues that he "was compelled to file his brief in response to Defendant's Reply Brief so that the Court would not be misled by Defendant's unsupported statements and opinions or by Defendant's corruption of the evidence." (Pl.Mot. to File Supplemental Brief [37] at 2.) Such an argument fails to address why plaintiff neglected to seek leave of Court as required by the Local Rules. Finding no justification for plaintiff's disregard of Court procedure, the Court denies plaintiff's Motion. The Court denies defendant's Motion to Strike as moot.

## III. Plaintiff's Claims Under the ADA

■ In order to establish a prima facie case of discrimination under the Americans with Disabilities Act (hereinafter "ADA") on a employment termination claim, an individual must show that: (1) he or she is disabled as it is defined under the ADA; (2) he or she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) because of such disability, the defendant employer terminated his or her employment. *Haysman v. Food Lion, Inc.*, 893 F.Supp. 1092, 1099 (S.D.Ga.1995) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995). Defendant avers that: (1) plaintiff is not disabled for purposes

of the ADA; (2) plaintiff could not perform the essential functions of the Route Assistant position; and (3) plaintiff was not terminated because of a disability, but because of an impairment which prevented him from lifting over 30 pounds on a regular basis.

### A. Is Plaintiff "Disabled" under the ADA?

#### 1. Does Plaintiff Have a Physical Impairment that Substantially Limits a Major Life Activity?

Under the terms of the ADA, one is considered to have a disability if he or she: (1) has a physical or mental impairment which substantially limits one or more of that person's major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). While the ADA does not define the key terms, guidance is found in the definitions listed in the regulations for the Rehabilitation Act, which have been adopted by the Equal Employment Opportunity Commission with regard to the ADA. The regulations define physical or mental impairment as including: (1) any physiological disorder or condition affecting one or more of several body systems, or (2) any mental or psychological disorder. 29 C.F.R. Pt. 1630, App. § 1630.2(h). An impairment rises to the level of a disability when it substantially limits one or more of the individual's major life activities. 29 C.F.R. Pt. 1630, App. § 1630.2(j).

Major life activities are those basic activities that the average person in the general population can perform with little or no difficulty. 29 C.F.R. Pt. 1630, App. § 1630.2(i). They may include caring for oneself, performing manual tasks, walking, working, sitting, standing and lifting. Id. A person is substantially limited in these activities if, as compared to an average person in the general population, he is significantly restricted as to the condition, manner or duration under which he can perform a major life activity. 29 C.F.R. § 1630.2(j).

Moreover, the Code of Federal Regulations suggests that: "If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered. If an individual is substantially limited in any other major life activity, *no determination should be made as to whether the individual is substantially limited in working.*" 29 C.F.R. Pt. 1630, App. § 1630.2(j) (emphasis added).

Whatever the impact on one's ability to work, the ability to care for oneself, perform manual tasks, walk, sit, stand, lift, and reach are all described as major life activities. See 29 C.F.R. Pt. 1630, App. § 1630.2(i). Plaintiff submits in his affidavit that "[he] can no longer sit, stand, stoop or bend for periods of time greater than 30–45 minutes. [He] can no longer lift greater than thirty pounds at a time. [He] can no longer lift greater than 5–10 pounds on a continuous basis.... [He] do[es] not expext [sic] to ever be able to perform the abovementioned activities." (McCollough Aff. [30] at ¶ 6.) In addition, he states that: "As a result of [his] back injury, [he] can not [sic] drive an automobile for greater than 30 minutes at a time without stopping to stand and rest my back for a while." (*Id.* at ¶ 8.)

Clearly, as noted by defendant, plaintiff's case could have been bolstered by corroborating evidence from his physician, Dr. Disch. Notwithstanding this omission, plaintiff's sworn testimony constitutes evidence that plaintiff was substantially limited in his ability to lift, which is one of the major life activities set out by the regulation. See *Haysman v. Food Lion, Inc.*, 893 F.Supp. 1092, 1100 (S.D.Ga.1995) (holding that dispute of material fact existed where plaintiff presented evidence that he could lift no more than 10–15 pounds, stand for only 30 minutes at a time and walk continuously for only 3 minutes). A literal application of the regulation thus indicates that plaintiff must show only that he is substantially limited in a major life activity, such as lifting, notwithstanding the arguable absence of a substantial limitation on his ability to work.

Defendant vigorously argues, however, that while plaintiff may have an impairment

that limits his ability to do one kind of job, he does not have a "disability" that substantially limits his work opportunities for other kinds of jobs. Citing case authority, defendant notes that an impairment that prevents an employee from performing only one kind of job is not a disability under the Act and quotes from a Fourth Circuit opinion:

> It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared.

*Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986).

Moreover, from a common sense point of view, there is some power to defendant's argument in this case. That is, as defendant notes, plaintiff has occupied several positions since he was terminated by defendant. He has been a driver, a "nailer", has pulled orders in a building materials company, and is presently working in sheet metal assembly. Accordingly, while he may no longer be able to lift, his impairment has not caused him to be unable to work in other positions presumably comparable in pay and status. Moreover, plaintiff essentially concedes that to have kept him as an employee, defendant would either have had to substantially restructure—and greatly reduce—plaintiff's job responsibilities or to have found a new position for him. Plaintiff argues that such substantial accommodations are owed to him, but not to other employees who are terminated because they lack the ability to perform a particular job, because he is "disabled." As defendant suggests, it arguably turns the very purpose of the ADA on its head to require that an employer give a job preference, over all other employees or applicants, to an individual who, while having an impairment that affects his ability to perform one kind of job, is not unable to perform a range of other comparable jobs not affected by the impairment.

Accordingly, plaintiff argues that the Court must apply the literal language of the regulations and defendant argues that the Court should follow those cases cited by defendant, which indicate that employees with bad backs, carpal tunnel syndrome, and the like, are not "disabled," by virtue of such impairments, alone. Because the Court has determined that, for other reasons discussed below, plaintiff cannot withstand defendant's motion for summary judgment, it will assume for purposes of discussion that plaintiff has averred facts sufficient for a reasonable finder of fact to conclude that he is disabled.

### 2. Was Plaintiff "Regarded As" Disabled?

As discussed above, plaintiff argues that he was actually disabled, and the Court has assumed, for purpose of discussion that plaintiff was disabled. Plaintiff also argues that he was effectively "disabled," because defendant "perceived" him as having a disability. One also receives the protection of the ADA if one is "regarded as having a disability," which can be demonstrated in any one of three ways: (1) The individual may have some impairment that does not substantially limit him in a major life activity, but is perceived by an employer as having a substantially limiting impairment; (2) The individual may have an impairment which, only because of adverse attitudes about the impairment, appears substantially limiting; or (3) The individual may be free from impairments, but regarded by the employer as having a substantially limiting impairment. 29 C.F.R. Pt. 1630, App. § 1630.2(*l*).

Plaintiff's contention most closely fits the situation described in (1). Specifically, plaintiff contends that "defendant ... perceived plaintiff as having an impairment that substantially limited his ability to work." To support his argument, plaintiff points to the fact that he was assigned temporary light duties when he injured his back and subsequently could not perform his customary duties.[4]

Plaintiff's conclusion that he was "regarded as having a disability" by defendant and

---

4. Plaintiff refers to the deposition testimony of defendant's Branch General Manager, Stephen

Craine, to support his contention. When asked whether plaintiff was terminated for having a

that this "perception" violated the ADA represents a misunderstanding of this particular prong of the statute, however. That is, under a straightforward reading of the regulations, generally only those who have impairments that are *not* substantially limiting may fit under the second definition of disabled, which includes being *"perceived"* as substantially limited in a major life activity. The Supreme Court, in the framework of the Rehabilitation Act of 1973, explained the rationale behind expanding the definition of disabled to include being "regarded as" disabled in *School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). The Court recognized that, while an individual may not be substantially limited, the perception and others that one is substantially limited in a major life activity can be just as disabling as actually being disabled. *Id.* 480 U.S. at 283, 107 S.Ct. at 1128–29.

■■■] In short, then, an employer becomes subject to this prong of the statute only when he inaccurately "perceives" as disabled, an employee, who is *not* substantially impaired, and thereafter negatively stereotypes that employee's abilities to the latter's detriment. In this case, while the parties disagree whether the classification "disability" is an appropriate label to place on defendant's back problems, both agree that he has a bad back. Because of that bad back, which prevented plaintiff from lifting, defendant terminated plaintiff from a position whose essential function was heavy lifting. Moreover, it is undisputed that defendant discontinued plaintiff's lifting duties as a result of representations made by plaintiff *himself* regarding his inability to continue doing the work that was a primary duty of his position. Accordingly, defendant's recognition of plaintiff's limitations was not an erroneous per-

ception, but instead was a recognition of a fact called to defendant's attention by plaintiff's own physician. Indeed, in every other section of his response, plaintiff argues that he was, in fact, disabled.[5]

For the above reasons, plaintiff has not made out a claim under this prong of the statute and the Court **grants** defendant's motion for summary judgment on this part of the complaint. *See also Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir.1993) ("An employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *Partlow v. Runyon*, 826 F.Supp. 40, 43–44 (D.N.H.1993) (quoting *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986) (" 'An employer does not necessarily regard an employee as handicapped [under the Rehabilitation Act] simply by finding the employee to be incapable of satisfying the singular demands of a particular job.' ")). *See also, Horton v. Delta Air Lines, Inc.*, 1993 WL 356894 *4 (N.D.Cal. Sept. 3, 1993) (holding that plaintiff's evidence showing that defendant refused to allow her to work as flight attendant because of her weight failed to demonstrate that defendant perceived her as substantially limited in any major life activity).

B. *Is Plaintiff a "Qualified Individual with a Disability?"*

Earlier in this order, the Court stated its assumption that plaintiff is "disabled." In addition to proving disability, to recover under the ADA, plaintiff must also show that he is qualified for the position that he held or desired. 42 U.S.C. § 12112(a). To be considered a qualified individual, plaintiff must

DUI, Craine responded: "No. He was being terminated for no longer being able to perform the essential job function of route assistant, which is the position that was available to him." (*See* Pl.Resp. to Def.Mot. for Sum.J. [29] at 11; Deposition of Stephen A. Craine (hereinafter "Craine Depo.") at 33.)

**5.** After asserting that he is perceived as having a disability as defined under the ADA, plaintiff, in the same discussion, repeats his contention that he has an impairment that substantially limits several major life activities. (*See* Pl.Resp. to Def.Mot. for Sum.J. [29] at 11.)

be able to perform the essential functions of his position, with or without reasonable accommodation. 42 U.S.C. § 12111(8).

■■■■■■ A reasonable accommodation should impose no undue hardship on the employer. Moreover, an employer is only required to make a reasonable accommodation when such accommodation will enable the employee to perform the essential functions of the job. If the employee is still unable to perform the essential functions of the position, the employer is under no obligation to eliminate or reallocate any of the job's essential functions. *See Larkins v. CIBA Vision Corp.*, 858 F.Supp. 1572, 1583 (N.D.Ga.1994) (Evans, J.) (quoting *Bolton v. Scrivner, Inc.*, 836 F.Supp. 783, 788–89 n. 4 (W.D.Okl.1993) (" 'The ADA does not require employers to modify the actual duties of a job in order to make an accommodation for individuals who are not physically capable of performing them ... The statute still requires that an individual be able to "perform the essential functions of the employment position ..." ' ").

Defendant argues that: (1) heavy lifting is an essential function of the Route Assistant position, (2) plaintiff was incapable of performing that function, and (3) defendant was under no duty to reallocate the function of lifting or otherwise restructure the job with regard to its essential elements. If defendant's contentions are true, plaintiff was not qualified for that job and, therefore, not entitled to force defendant to accommodate him with regard to the lifting function.

### 1. *Can Plaintiff Perform the Essential Functions of the Route Assistant Job?*

■■■■ The Court must first determine whether lifting weights greater than 30 pounds—the function that plaintiff cannot perform—is an essential function of the Route Assistant position. The regulations provide the basis for the Court's analysis. They state that the initial inquiry into whether a function is essential focuses on whether the employer "actually requires employees in the position to perform the functions that the employer asserts are essential." 29 C.F.R. Pt. 1630, App. § 1630.2(n).

A Driver/Salesperson and Route Assistant cover a given route on each work day, making designated stops at which they carry the cases of beer ordered by a customer into that customer's work area. Plaintiff, himself, admits that Route Assistants lift more than one case of beer at a time (over 30 pounds) for the majority of the workday. (*See* McCollough Depo. at 109–10.) As a general rule, Route Assistants are required by defendant to lift weight over 30 pounds at a time in order to complete the designated route on time. (*See* Deposition of John E. Brannen (hereinafter "Brannen Depo.") at 33–34, 38–39.) Accordingly, the defendant does require its Route Assistant to perform the allegedly "essential" function: lifting weight over 30 pounds.

Having answered the first question in the affirmative, the regulations posit a second: [Will] "removing the function [ ] fundamentally alter that position?" 29 C.F.R. Pt. 1630, App. § 1630.2(n). Factors to be considered include: (1) whether the reason the position exists is to perform that function; (2) whether there are a limited number of employees available among whom the performance of that job function can be distributed; and/or (3) whether the function is highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function. *See* 29 C.F.R. § 1630.2(n), App. § 1630.2(n).

Presumably, the Route Assistant position was created primarily for the purpose of unloading heavy cases of beer, as that is the main duty of the job. As noted by Mr. Craine, defendant's Branch General Manager, the Route Assistant and Driver/Salesman usually divide the responsibility for unloading the beer, although the Route Assistant may well handle the bulk of the lifting. Further, the only other person to whom the Route Assistant's lifting duties could be assigned is the Driver/Salesperson. Eliminating the Route Assistant's lifting responsibilities

would, as a matter of law, fundamentally alter that position. Where there are only two employees per team, it seems essential that both be able to perform the lifting functions. *See Larkins v. CIBA Vision Corp.,* 858 F.Supp. 1572, 1580 (N.D.Ga.1994). In this case, the position is not highly specialized and, thus, the third factor is inapplicable.

Moreover, the ADA directs: "Consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). This text makes clear that "the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards, whether qualitative or quantitative, nor to require employers to lower such standards." 29 C.F.R. Pt. 1630, App. § 1630.2(n) (citation omitted).

Defendant not only considers essential the ability to lift weight of over 30 pounds, but provides a written job description of the Route Assistant position evidencing that belief. Listed among the "essential functions" of the Route Assistant job are:

* Lifting over 70 lbs., with continuous and extensive lifting.

* Handling of handtruck loaded approximately 200 lbs. plus.

* Reaching, pulling, twisting, bending, stooping, and handling of beer cases/kegs, unloading truck and placing in stores is required.

* Extensive walking is involved.

* Ability to maneuver around a large truck (climbing in and out of cab, raising and lowering side doors (bay), etc.)

(Craine Aff. at Ex. 2.)

After a consideration of the relevant factors, it is clear that the position is physically demanding and requires the ability to lift weight over 30 pounds continuously throughout the day. The Court concludes that the uncontroverted evidence demonstrates, as a matter of law, that lifting over 30 pounds is an essential function.

■ As stated above, plaintiff must show that he is qualified to perform the essential functions of the job he held with or without reasonable accommodation. As it is abundantly clear that plaintiff could *not* perform the essential duties without accommodation,[6] plaintiff may be considered a "qualified" employee only if he identifies "reasonable" accommodations that could have been made to allow him to continue in his job. Plaintiff admits that because of his DUI conviction, he could not drive a company truck. Plaintiff argues that defendant, in order to accommodate his disability, should have assigned to him the typical duties of the Driver/Salesman, such as handling money, inventory and shelving, and required the Driver/Salesman to drive the truck, as well as shifted to him all of plaintiff's lifting duties, which previously would have been performed by both the driver and the route assistant. (*Id.* at 15.)

In short, plaintiff believes that a reasonable accommodation would have been to require his partner to do all the driving and all the lifting, while plaintiff spent his day interacting with customers and handling the paperwork. As a practical matter, this clearly would have been a pleasant accommodation for plaintiff—and likely a great improvement over the previous hardships of the Route Assistant's position—but one doubts that his partner, who would now be doing plaintiff's job plus his own, would consider the arrangement fair or reasonable. Specifically, the Driver/Salesperson is the "higher" position of

---

**6.** Plaintiff does not contend that he can perform the essential functions without reasonable accommodation.

the team.[7] The employee holding that position bears the responsibility for seeing that the orders are delivered properly, for servicing all customers' accounts, and for recording any new sales that might be made on the route. In return for the greater responsibilities of this position, the Driver/Salesperson receives a commissioned salary; in contrast, the Route Assistant is not paid on a commissioned basis. Plaintiff's suggested reallocations of duties would place the supervisor in the position of doing all the manual labor previously performed by his assistant, while the assistant would handle the servicing of the customers, whose satisfaction is the responsibility of the Driver/Salesperson and whose orders account for the commissions that constitutes the latter's salary. Such a shifting of duties totally redefines not only plaintiff's essential duties, but also the essential duties of the Driver/Salesman.

■■■■] Moreover, beyond the fact that the employer would now be paying plaintiff for work that his partner was being required to perform, the efficiency of the team would be greatly minimized as, with only one person doing the lifting previously handled by two people, it would take more time to make each delivery. Likewise, plaintiff concedes that, in addition to heavy lifting, he is also restricted from riding for more than 30 minutes at a time without taking a break to rest his back.[8] Acknowledging that this requirement would also slow down completion of the designated route, plaintiff contends that his employer can easily accommodate him by allowing plaintiff and his partner to make fewer stops than other employees make on their routes. Beyond the fact that this second restriction would limit the efficiency of any team on which plaintiff works, defendant points out it would also reduce the compensation of plaintiff's partner, the Driver/Salesman whose salary is paid on a commission basis. While plaintiff may have found such an arrangement reasonable for him, one doubts that his partner would have pleased to learn that not only would he now be performing all of plaintiff's previous work, but that he would be doing so at a reduced compensation. The ADA forbids discrimination against the disabled. It does not require the imposition of punitive measures against the nondisabled to accomplish this purpose.

■■■■] Beyond the impracticality of plaintiff's suggestion, he also fails to show, as required by the ADA, how *any* accommodation would actually enable *him* to perform the essential function of lifting greater than 30 pounds. As stated above, defendant is under no obligation under the ADA to reallocate essential functions. *See Larkins v. CIBA Vision Corp.*, 858 F.Supp. 1572, 1583 (N.D.Ga.1994) (Evans, J.) ("The ADA [ ] does not require Defendant to eliminate an essential function of the ... position to accommodate Plaintiff."); 29 C.F.R. Pt. 1630, App. § 1630.2(*o* ) ("An employer ... may restructure a job by reallocating or redistributing *nonessential, marginal job functions....* An employer ... is *not required to reallocate essential functions.*") (emphasis added). Similarly, in interpreting § 504 of the Rehabilitation Act, the Supreme Court has concluded that "[w]hen a handicapped person is not able to perform the essential functions of the job, the court must also consider whether any 'reasonable accommodation' by the employer would *enable the handicapped person to perform those functions.*" *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) (emphasis added).

7. *The employer consistently describes plaintiff as* having been "demoted" when he was earlier moved from the Driver/Salesperson position to the Route Assistant's position after having been convicted on a DUI charge.

8. As defendant notes, plaintiff indicates in the section of his response addressing whether he is "disabled", that because of his bad back, he could not drive to jobs outside the Covington, Georgia area and therefore could not seek employment in Atlanta. Defendant's main terminal is in Stone Mountain, which is in the Atlanta metro area. As defendant notes, given plaintiff's representation, it is therefore unclear how plaintiff would be able to transport himself to his job site each day.

Thus while the ADA and Section 504 would require an employer to restructure the marginal functions of a job as a reasonable accommodation, neither statute requires the employer to restructure the job so that the individual with a disability does not have to perform its essential functions. The Court, therefore, concludes as a matter of law that plaintiff is not a "qualified individual with a disability" with regard to the Route Assistant position, as he has failed to adduce any evidence that shows that he would, with any accommodation, be able to perform the essential function of lifting greater than 30 pounds.

### 2. Did Reasonable Accommodation Include Offering Either Permanent Light–Duty Work or Reassignment?

Having decided that plaintiff could not perform the essential functions of his job and that no reasonable accommodation would enable him to do so, this Court considers plaintiff's suit under the ADA to be without merit. Plaintiff also argues, however, that if his employer was unwilling to shift his former duties to his partner, then the employer was required to find plaintiff another job somewhere in the company, either by allowing plaintiff to perform light duties or by finding some other job for him to perform.

#### a. Light–Duty as a Reasonable Accommodation

[█] Plaintiff claims alternatively that defendant should have accommodated him by offering him light duty and relies heavily on *Taylor v. Garrett*, 820 F.Supp. 933 (E.D.Pa. 1993), a case decided under the Rehabilitation Act. (Pl.Resp. to Def.Mot. for Sum.J. [29] at 17–23.) Although the court in *Taylor* declined to grant summary judgment to defendant, finding that a question of fact existed regarding which position plaintiff held when he was discharged, *Taylor* does not stand for the proposition that an employer must find another job for a newly disabled employee. *Taylor*, 820 F.Supp. at 940. Rather, *Taylor* acknowledged that the relevant inquiry is whether plaintiff could perform the essential functions *of the job he held*

*at the time he was discriminated against. Id.* at 938 (emphasis added).

In this case, however, plaintiff has failed to produce any evidence that shows that, at the time of the alleged discrimination, he was assigned to light duty. Plaintiff merely asserts in his responsive brief that he "is able to perform the essential functions of the positions he was assigned *while* on light duty" and should, therefore, have been given light duty upon his return from long-term disability leave. (*See* Pl.Resp. to Def.Mot. for Sum.J. [29] at 18 (emphasis added).)

While both parties acknowledge that plaintiff was assigned to light-duty when he originally injured his back in September of 1991, it is undisputed that plaintiff's light duty position—like other light duty positions—was only temporary. (*See* Craine Aff. at ¶ 7; McCollough Depo. at 84–85, 113–14.) In fact, plaintiff stated that he "believe[d] [he] w[as] a driver salesman as of November 1992," the time of his return. (McCollough Depo. at 61–62.) In addition, defendant's conduct demonstrates an understanding that plaintiff was no longer engaged in a light-duty position and was expected to return to work in a full capacity. Upon learning of plaintiff's *nolo contendere* plea, managers Stephen Craine and John Brannen, went to plaintiff's home and told him that, pursuant to the company's safe driving program, he could not have a driving position for a certain number of years. (McCollough Depo. at 63.) These actions support the conclusion that plaintiff was no longer assigned to light-duty. Moreover, plaintiff acknowledges in his deposition that, his managers told him that he "probably" would be demoted to a Route Assistant position upon his return from disability leave. (McCollough Depo. at 63.)

Despite the apparent dispute as to which position plaintiff held upon his return from leave, no evidence before the Court suggests that either party ever considered the possibility that plaintiff still held a light-duty position after he took disability leave. Finding no issue of fact on this question, the Court concludes that plaintiff has not demonstrat-

ed that he was in a light duty position when he was terminated. The Court need not consider, therefore, the question of whether plaintiff was qualified for such a light-duty position.[9] *See Taylor,* 820 F.Supp. at 939 (holding that where an employee is discharged while on light-duty, the relevant inquiry must be whether he was qualified for that light-duty position as opposed to his former position).

] Additionally, it is clear that defendant is under no obligation to create a light-duty position if none is available. *Mott v. Synthetic Industries,* 1995 WL 584734 *4 (N.D.Ga. August 9, 1995); *Howell v. Michelin Tire Co.,* 860 F.Supp. 1488, 1492 (M.D.Ala.1994) (citing Equal Employment Opportunity Commission's Technical Assistance Manual on the ADA § 9.4). To the extent that plaintiff may be arguing that because defendant once allowed plaintiff to perform light duties it is forever bound to allow plaintiff to perform such functions, neither the law nor sound policy considerations favor such a construction. As to policy ramifications, by initially providing plaintiff with temporary light duties when he was unable to perform his regular duties, defendant treated a temporarily disabled employee in a compassionate manner that society should encourage. Plaintiff's argument would discourage an employer from providing any stopgap measures to keep an ailing employee on the payroll while he recuperates lest such action might be construed as creating an entitlement for the employee, allowing him to claim forever that he had a right to continue on with his reduced duties.

For the above reasons, the Court concludes that plaintiff has not presented evidence that he was occupying a light-duty position or that defendant had one available.

**b. Reassignment as a Reasonable Accommodation**

 Plaintiff also argues that defendant was obliged to appoint him to one of the allegedly available positions that he claims he was capable of performing. *See* 42 U.S.C. § 12111(9) (The term "reasonable accommodation" may include—(B) ... "reassignment to a vacant position ..."); *Haysman v. Food Lion, Inc.,* 893 F.Supp. 1092, 1104 (S.D.Ga. 1995) ("The ADA ... contains explicit language concerning the employer's duty to consider reassignment to a vacant position as a possible accommodation if the employee is no longer able to perform the essential functions of his original job.").

Relying on *Valdez v. The Albuquerque Public Schools,* 875 F.Supp. 740 (D.N.M. 1994), plaintiff argues that "while an employer is not required to find another job for an employee who becomes unable to do the job he or she has been doing, it cannot 'deny an employee alternative employment opportunities reasonably available under the employer's existing policies.'" *Valdez,* 875 F.Supp. at 745 (quoting *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987)).

There appears to be some uncertainty as to whom the employer's existing policy must be targeted. Some courts have concluded that where an employer, as a practice or policy, reassigns *nondisabled* employees, it must afford the same opportunity to its disabled employees. *Emrick v. Libbey–Owens–Ford Co.,* 875 F.Supp. 393 (E.D.Tex.1995). Other courts posit that where an employer has a policy of reassigning *disabled* employees it must attempt to reassign all disabled employees who can no longer perform the essential functions of the job for which they were hired. *Valdez v. The Albuquerque Public Schools,* 875 F.Supp. 740 (D.N.M.1994).

As an example of the first approach, in *Emrick v. Libbey–Owens–Ford Co.,* 875 F.Supp. 393 (E.D.Tex.1995), the plaintiff argued that the defendant was required, as a reasonable accommodation, to offer him any vacant position for which he was qualified once he could no longer perform the job for

---

9. Plaintiff states that while on light-duty he performed such functions as running mail, repack-
ing, extra presales. (McCollough Depo. at 85.)

which he was hired. *Emrick,* 875 F.Supp. at 397. After reviewing the pertinent regulations,[10] the District court rejected such an expansive interpretation of reasonable accommodation under the ADA. *Id.* In so doing, the court noted that "[t]he ADA is not intended to give persons with disabilities preferential treatment, but rather is intended to provide them with the same opportunities as their nondisabled counterparts." *Id.* (citing 29 C.F.R. Pt. 1630, App. § 1630.2(o)). The court concluded that "[b]ecause it is the aim of the ADA to merely ensure equality and not preference to disabled employees, an employer is only required to offer transfer to another facility in situations where it is the regular practice of that employer to transfer employees between facilities." *Id.* at 398. *See also, Wood v. County of Alameda,* 1995 WL 705139 *11 (N.D.Cal. Nov. 17, 1995) ("Although the ADA lists reassignment only as one potential form of reasonable accommodation, courts have consistently interpreted this provision ... to require employers to reassign qualified individuals with a disability to a vacant position if, but only if, the employer has a regular practice or policy of reassigning nondisabled employees to other positions.").

In contrast, other courts have looked to the employer's practice regarding the reassignment of newly disabled employees and held that where an employer has accommodated *other* disabled employees through reassignment, it must offer such opportunities to *all* of its disabled employees. In *Valdez v. The Albuquerque Public Schools,* 875 F.Supp. 740 (D.N.M.1994), the district court found that "employers are obliged to follow their existing policies with regard to the accommodation of employees who become disabled." *Valdez,* 875 F.Supp. at 745–46

(citing *Henchey v. Town of N. Greenbush,* 831 F.Supp. 960, 967 (N.D.N.Y.1993); *Griffin v. Defense Mapping Agency,* 864 F.2d 1579, 1581 (D.C.Cir.1989); *Coley v. Secretary of Army,* 689 F.Supp. 519, 522–23 (D.Md.1987)). *See also, Howell v. Michelin Tire Corp.,* 860 F.Supp. 1488, 1492 (M.D.Ala.1994) ("Reasonable accommodation ... does not require that an employer create a light-duty or a new permanent position. But, if an employer has a vacant light-duty position or a vacant permanent position for which the employee is qualified, it would be a reasonable accommodation to reassign the employee to that position.").

This Court concludes that the approach most consistent with the policy objectives of the ADA is the first approach. That is, an employer must reassign an employee whose disability prevents him from performing his current job to a vacant position for which he is qualified only if the employer has a regular practice or policy of reassigning nondisabled employees who can no longer perform their job. As noted by those courts that have followed this approach, the aim of the ADA is to ensure equality among disabled and nondisabled employees, not to create a preference for disabled employees over an employee who does not have an identifiable impairment, but who nevertheless can no longer perform his job or who no longer has a job to perform. The second approach appears to confuse the approach taken in the analysis of due process-property rights claims, where a public employee becomes entitled to certain safeguards in any job action as a result of expectations that the employer has created through its employment practices,[11] with the purpose underlying the ADA: to prohibit discrimination against the

---

**10.** The regulations state that under the ADA, accommodation should ensure that employees with disabilities "enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities." 29 C.F.R. Pt. 1630, App. § 1630.2(o).

**11.** *See, Bd. of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972). ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security

of interests that a person has already acquired in specific benefits. ... [I]n the area of public employment, the Court has held that [under certain conditions employees] have interests in continued employment that are safeguarded by due process." (citations omitted)). *See also, Warren v. Crawford,* 927 F.2d 559, 562 (11th Cir.1991) ("A public employee who may be terminated only for cause, however, has a protected property interest in continued employment." (citations omitted)).

disabled.[12]

Moreover, this Court concludes that the second approach not only exceeds the ADA's aim to ensure equal treatment between the disabled and nondisabled, but it also creates some unintended and undesirable disincentives for the employer. That is, public policy favors a decision by an employer to try to find another position for an employee whose disability renders him incapable of performing his current position, for, whether legally required or not, such action is a compassionate reaction to the misfortune of an employee. The second approach, however, would hold that whenever an employer has developed a "practice"—which could arguably consist of only one or two reassignments—of finding a vacant position for a disabled employee, it must follow that "practice" for all disabled employees. Such a standard discourages an employer from ever trying to find a new job for a truly disabled employee who can no longer perform the essential functions of his job, for fear that the employer will be deemed to have adopted a "practice" that will require it to always locate new positions for employees who claim that they cannot perform their designated work as a result of a "disability," else risk litigation over every refusal to reassign.

Applying the first approach to this case, plaintiff has produced no evidence that defendant had a practice of reassigning nondisabled employees who could no longer perform their job to new positions. Therefore, as a logical matter, the plaintiff cannot show that the defendant discriminated against him as a result of his disability by not reassigning him to a different position.

■] Even assuming, however, that the second approach controls—that is, if an employer has a practice of assigning disabled employees who can no longer do their jobs to vacant jobs for which they are qualified, they are forever bound to endeavor always to reassign any employee with a "disability"— plaintiff still does not adduce evidence sufficient to allow him to survive defendant's motion for summary judgment.

Specifically, plaintiff asserts that defendant "had existing policies of creating new positions for injured employees who could no longer perform the essential functions of their original positions." (Pl.Resp. to Def. Mot. for Sum.J. [29] at 21.) Defendant denies the existence of such a policy. In support of his contention, plaintiff alleges that defendant created two new positions for injured employees, Kevin Glover and Mike Yeargin, and reassigned one injured employee, Bobby Garmon, to another job.

With regard to the jobs allegedly created for injured employees, plaintiff points to testimony given by Toby L. Franklin, a Sales–Services Supervisor, Stephen Craine, Branch General Manager, John Brannen, Sales Manager, and John Economos, defendant's

---

12. Although the Court agrees with those courts that have concluded that the regulations require the employer to reassign disabled employees only if it also has a practice of reassigning nondisabled employees, one could also argue that the regulations may require reassignment as a reasonable accommodation whether the employer has adopted a policy of reassignment directed toward any group of employees—disabled or nondisabled:

> [E]mployers should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time.... An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for

which the individual is qualified with or without reasonable accommodation.... [A]n employer is not required to promote an individual with a disability as an accommodation.

29 C.F.R. Pt. 1630, App. § 1630.2(o). Accordingly, one can adopt one of two approaches on this question: either an employer must always attempt to reassign a disabled employee or an employer must make such efforts only if he makes similar efforts for nondisabled employees who can no longer perform their duties. For the reasons stated in text, however, this Court concludes that a company's policy regarding reassignment of its disabled employees does not establish a right, under the ADA, for all disabled employees to insist on reassignment upon their inability to perform the essential functions of a job.

President, which plaintiff characterizes as indicating that after Kevin Glover, a Driver/Salesman, injured his back, defendant created for him a new position as "extra Pre–Salesman." (*See* Pl.Resp. to Def.Mot. for Sum.J. [29] at 21.) Defendant denies "creating" this position for Mr. Glover.[13] Similarly, plaintiff alleges that defendant created a new position for Mr. Mike Yeargin because a back injury prevented him from carrying out his original duties. (Pl.Resp. to Def.Mot. for Sum.J. [29] at 21.) [14]

Plaintiff further asserts that defendant assigned another employee, Bobby Garmon, to "the new position of mail carrier," following an injury. (Pl.Resp. to Def.Mot. for Sum.J. [29] at 21.) Upon review of the actual testimony, the Court finds that Mr. Economos stated that he did not recall anyone holding the mail carrier position prior to Mr. Garmon, but that he was "not sure." (Economos Depo. at 24.)

Plaintiff has not, with these facts, established that defendant created a new job for any of these three employees. Indeed, at other points in his response, he acknowledges that an employer has no duty to create a new job for a disabled employee. The above facts do, however, establish that on three occasions, the defendant reassigned injured employees, two of them with a back injury, to another position.

13. Mr. Craine specifically denied that the position was created for Mr. Glover. Instead, he asserted that it was a position that "was being tested across the company." (Craine Depo. at 66.) Mr. Brannen stated that Mr. Glover was indeed the first person to hold that job, but added that the position was one the company was "experimenting with." (Brannen Depo. at 63.) Mr. Franklin concurred that Mr. Glover filled a new position. (Deposition of Toby L. Franklin (hereinafter "Franklin Depo.") at 43.)

14. Mr. Franklin's testimony states:

Q What was [Mr. Yeargin's] position before he was injured in the car accident?
A We're going way back. I'm just guessing. I think he was an extra man.
Q Was he able to perform the duties as an extra man after his car accident?
A I don't remember.
Q Do you know if he was physically unable to perform those duties?

In addition, plaintiff cites deposition testimony indicating that defendant would have reassigned plaintiff had an appropriate position been available. Specifically, when asked if defendant would reassign an injured employee if he had the ability to perform other jobs, Mr. Economos stated:

[I]f this employee is injured and there is another position that this employee could, could do and it's an open position, I would say yes. We would not create a position for an employee such as that, but we would try to accommodate them, yes.

(Economos Depo. at 26.)

The Court, therefore, finds that plaintiff's evidence, while falling short of actually demonstrating that defendant had a policy of reassigning injured employees to vacant jobs for which they were qualified, creates an issue of fact on that matter. *See Valdez*, 875 F.Supp. at 746 (denying summary judgment to defendant where court found that it was unclear from record whether defendant typically accommodated disabled employees by job restructuring). If one then applies a rule that an employer who has followed a practice of assigning disabled employees to vacant jobs for which they are qualified must always adhere to such a policy in the future—which rule the Court applies only for purposes of discussion [15]—plaintiff can survive defendant's motion for summary judgment only if

A I, still, again I don't remember.
Q Do you remember if he was reassigned to another position because of the injuries that he received in the car accident?
A Not because, No.
Q Do you know why he was reassigned to another position?
A At that time he was reassigned to the draft department because they needed someone to clean draft lines.
Q Whose position was he taking?
A Nobody. That was a new position at that time.
Q Was that reassignment to clean the draft lines, was that immediately after his accident?
A I don't remember.
(Franklin Depo. 45–46.)

15. The facts of this case demonstrate the logical flaws in such an approach. Here, plaintiff is complaining that defendant discriminated against him because of his disability by not as-

he produces evidence that a vacant job for which he was qualified existed.[16] He has not.

In order to establish his prima facie case, plaintiff must point to a particular vacant position for which he was qualified, but to which he was not reassigned. *Haysman v. Food Lion, Inc.,* 893 F.Supp. 1092, 1105 (S.D.Ga.1995). Plaintiff claims that defendant had positions available in repacking, telephone sales, and data entry. (Pl.Resp. to Def.Mot. for Sum.J. [29] at 21; Pl.Depo. at 106–07.) The only evidence indicating the existence of these positions, however, is plaintiff's own affidavit and deposition testimony. (McCollough Aff. [30] at ¶¶ 12, 13; McCollough Depo. at 106–07.) Plaintiff states that he knew the repacking job was open because he knew that the employee who held the job had quit. (McCollough Depo. at 66.) Shortly after he was fired, plaintiff claims that he learned, from another employee, about a job that defendant had created in the front office working with a computer. (*Id.* at 67, 69.) Plaintiff offers no particular statement regarding his knowledge that the telephone sales position was vacant. Defendant has denied that any vacancy for which plaintiff was qualified existed. (Craine Depo. at 39; Brannen Depo. at 50.)

▆▆ The Court finds that plaintiff has not produced evidence that raises a genuine issue of material fact with regard to this issue. First, plaintiff's affidavit presents no evi-

dence of vacancies within the company. *See Haysman,* 893 F.Supp. at 1105. The FEDERAL RULES OF CIVIL PROCEDURE state that an affidavit "shall be made on personal knowledge and set forth such facts as would be admissible in evidence." FED.R.CIV.P. 56(e). "It is well established that hearsay evidence which is inadmissible at trial cannot be considered on a motion for summary judgment." *Haysman,* 893 F.Supp. at 1105. Plaintiff simply avers, "[w]hen I was terminated by Defendant, three jobs were vacant which included repacker, telephone salesman and data entry clerk." (McCollough Aff. [30] at ¶ 13.) This general assertion fails to set forth any admissible facts which form the basis of his personal knowledge. Accordingly, plaintiff's affidavit presents no evidence in support of his contention that vacancies existed.

Similarly, the Court concludes that plaintiff's deposition testimony fails to present viable evidence of existing vacancies within defendant company at or near the time of plaintiff's firing. With regard to plaintiff's testimony that he knew of a vacancy in repacking because he "knew the guy" who quit, the Court finds that plaintiff has only presented evidence that an employee left a particular position. Nothing in plaintiff's deposition confirms that defendant planned to fill the job as opposed to eliminate it, for example. Additionally, with regard to plaintiff's testimony that an employee in the front of-

---

signing plaintiff to a vacant job that he could perform. The gravamen of any discrimination case is the disparate treatment, with the intent to discriminate, of a member of a protected class, as compared with the treatment of a member of a nonprotected class. Here, however, plaintiff's only evidence of prior reassignments for employees unable to perform their assigned job is defendant's reassignment of three assumedly disabled employees: evidence that demonstrates the employer's intention to treat the disabled in a favorable manner, which contradicts an inference of discriminatory intent toward the disabled.

Analogized to traditional discrimination principles, the flaw in the approach is clearer. Assume a woman who is RIF'd by her employer and who claims that the employer's failure to reassign her to another position constitutes discrimination on the basis of sex. Assume also that this plaintiff's only evidence concerning other reassignments by

the employer in similar circumstances is the reassignment of three women after a RIF. Such evidence would doom, not help, the plaintiff's chance of prevailing against defendant on a motion for summary judgment.

16. Plaintiff would have to prove the existence of a vacant job for which he was qualified under any of the three approaches discussed *supra;* that is, whether the ADA (1) *always* requires the employer to reassign the disabled employee to a vacant position for which he is qualified, (2) requires such reassignment only when its policy provides for the reassignment of nondisabled employees who can no longer perform their jobs, or (3) requires such reassignment only when *its* policy provides for the reassignment of disabled employees who can no longer perform their work.

fice, Sandra Kidd, "told [him] about [a vacancy]," the Court finds that plaintiff's evidence is based on inadmissible hearsay. Because inadmissible at trial, such evidence may not be considered on a motion for summary judgment. *Haysman*, 893 F.Supp. at 1105.

Plaintiff cannot be heard to complain that the required information was impossible to locate. Plaintiff could have easily taken the deposition of Ms. Kidd or any other employee with personal authority or with access to personnel records, whose statements would be admissible because they would reflect personal knowledge. Moreover, plaintiff had every opportunity during discovery to seek out relevant personnel or head-count information. The Court finds, therefore, that plaintiff has failed to satisfy the requirements for demonstrating a prima facie case of discrimination, as he has provided no evidence of the existence of vacancies within defendant company.[17]

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment [27] is **GRANTED**; plaintiff's Motion to Strike [28] is **DENIED AS MOOT**; defendant's Motion to Strike [36] is **DENIED**; and plaintiff's Motion to File Supplemental Brief [37] is **DENIED**.

SO ORDERED.

17. Because plaintiff has produced no evidence with regard to available positions, the Court need not discuss whether plaintiff was qualified for any other job.